1    PACIFIC TRIAL ATTORNEYS
     A Professional Corporation
2    Scott J. Ferrell, Bar No. 202091
     sferrell@pacifictrialattorneys.com
3    Victoria C. Knowles, Bar No. 277231
     vknowles@pacifictrialattorneys.com
4    4100 Newport Place Drive, Ste. 800
     Newport Beach, CA 92660
5    Tel: (949) 706-6464
     Fax: (949) 706-6469
6
7    Attorneys for Plaintiff

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   JUDY OH, individually and on behalf of      Case No. 2:25-cv-5140
     all others similarly situated,
12                                               **CLASS ACTION COMPLAINT FOR:**
            Plaintiffs,
13                                               1. VIOLATION OF CALIFORNIA
            v.                                   UNFAIR COMPETITION LAW,
14                                               BUSINESS AND PROFESSIONS CODE
     GOOSEFOOT ACRES, INC., an Ohio              § 17200, *et seq.*
15   corporation, d/b/a DANDY BLEND,             2. FALSE AND MISLEADING
                                                 ADVERTISING IN VIOLATION OF
16          Defendant.                           BUSINESS AND PROFESSIONS CODE
                                                 § 17500, *et seq.*
17                                               3. VIOLATION OF CALIFORNIA
                                                 CONSUMERS LEGAL REMEDIES
18                                               ACT, CIVIL CODE § 1750, *et. seq.*
19

20

21

22

23

24

25

26

27

28

1

## <u>INTRODUCTION</u>

2      **1.**     Defendant Goosefoot Acres Inc., doing business as Dandy Blend

3 ("Defendant"), manufactures and sells a popular line of dandelion tea throughout

4 California. To increase profits at the expense of consumers and fair competition,

5 Defendant deceptively sells its products in oversized packaging that does not reasonably

6 inform consumers that they are half empty. Defendant's slack-fill scam extends to its

7 14.1-ounce "Dandy Blend Instant Herbal Beverage" product sold in opaque containers

8 (the "Product"). Defendant dupes unsuspecting consumers across America to pay

9 premium prices for empty space. In one version of the Product, the opaque container

10 below is a true and correct image of the Instant Herbal Beverage, evidencing the

11 deception. The left photograph shows the Product as it appears to the purchaser, and the

12 right photograph shows that the interior Product packaging is substantially empty.

13

14

15

16

17

18                     

19

20

21

22

23

24

25      2.     Defendant markets the Product in a systematically misleading manner by

26 representing it as adequately filled when, in fact, it contains an unlawful amount of

27 empty space or "slack-fill." Defendant underfills the Product for no lawful reason. The

28 front of the Product's packaging does not include any information that would

1    reasonably apprise Plaintiff of the quantity of product relative to the size of the

2    container, such as a fill line.

3        3.    Defendant underfills the Product to save money (by not filling the

4    containers) and to deceive consumers into purchasing the Product over its competitors'

5    products. Defendant's slack-fill scheme not only harms consumers, but it also harms its

6    competitors who have implemented labeling changes designed to alert consumers to the

7    true amount of product in each container.

8        4.    Accordingly, Defendant has violated the California Consumers Legal

9    Remedies Act ("CLRA"), particularly California Civil Code sections 1770(a)(2),

10   1770(a)(5), 1770(a)(7), and 1770(a)(9). As such, Defendant has committed per se

11   violations of the Unfair Competition Law ("UCL"), Business & Professions Code

12   section 17200, *et seq.*, and the False Advertising Law ("FAL"), Business & Professions

13   Code section 17500, *et seq.*

14       5.    Plaintiff and consumers have, accordingly, suffered injury in fact caused

15   by the false, unfair, deceptive, unlawful, and misleading practices set forth herein, and

16   seek injunctive relief, as well as, inter alia, compensatory damages, statutory damages,

17   restitution, and attorneys' fees.

18       6.    Several state and federal courts have found that cases involving nearly

19   identical claims are meritorious and appropriate for class treatment. *See, e.g.*,

20   *Winkelbauer v. Orgain Mgmt. et. al*, Case No. 20STCV44583 (L.A.S.C. May 20, 2021)

21   (defendant's demurrer to claims involving slack-filled protein powder products

22   overruled); *Barrett v. Optimum Nutrition*, Case No. 2:21-cv-04398-DMG-SK (C.D. Cal.

23   Jan. 12, 2022) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled protein

24   powder claims denied); *Padilla v. The Whitewave Foods Co., et. al.*, Case No. 2:18-cv-

25   09327-JAK-JC (C.D. Cal. July 26, 2019) (defendant's FRCP 12(b)(6) motion to dismiss

26   slack-filled supplement container claims denied); *Matic v. United States Nutrition, Inc.*,

27   Case No. 2:18-cv-09592-PSG-AFM (C.D. Cal. Mar. 27, 2019) (defendant's FRCP

28   12(b)(6) motion to dismiss slack-filled supplement container claims denied); *Merry, et*

1  *al. v. International Coffee & Tea, LLC dba The Coffee Bean*, Case No. CIVDS1920749
2  (San Bernardino Superior Court Jan. 27, 2020) (defendant's demurrer to slack-filled
3  powder container claims overruled); *Coleman v. Mondelez Int'l Inc.*, Case No. 2:20-cv-
4  08100-FMO-AFM (C.D. Cal. July 26, 2021) (defendant's FRCP 12(b)(6) motion to
5  dismiss slack-filled Swedish Fish® candy box claims denied); *Iglesias v. Ferrara*
6  *Candy Co.*, Case No. 3:17-cv-00849-VC (N.D. Cal. July 25, 2017) (defendant's FRCP
7  12(b)(6) motion to dismiss slack-filled Jujyfruits® and Lemonhead® candy box claims
8  denied and nationwide settlement class certified) (cert. granted Oct. 31, 2018);
9  *Tsuchiyama v. Taste of Nature, Inc.*, Case No. BC651252 (L.A.S.C. Feb. 28, 2018)
10  (defendant's motion for judgment on the pleadings involving slack-filled Cookie Dough
11  Bites® candy box claims denied and nationwide settlement subsequently certified
12  through Missouri court); *Gordon v. Tootsie Roll Industries, Inc.*, Case No. 2:17-cv-
13  02664-DSF-MRW (C.D. Cal. Oct. 4, 2017) (defendant's FRCP 12(b)(6) motions to
14  dismiss slack-filled Junior Mints® and Sugar Babies® candy box claims denied);
15  *Escobar v. Just Born, Inc.*, Case No. 2:17-cv-01826-BRO-PJW (C.D. Cal. June 12,
16  2017) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled Mike N' Ike® and Hot
17  Tamales® candy box claims denied, and California class action certified over
18  opposition) (cert. granted June 19, 2019); *Thomas v. Nestle USA, Inc.*, Cal. Sup. Case
19  No. BC649863 (April 29, 2020) (certifying as a class action, over opposition, slack-fill
20  claims brought under California consumer protection laws).

## PARTIES

22      7.      Plaintiff Judy Oh is a citizen and resident of California and this District.
23  Plaintiff purchased a bag of Defendant's 14.1-ounce Dandy Blend Instant Herbal
24  Beverage for personal use in 2025 for $26.99.  In making her purchase, Plaintiff relied
25  upon the opaque packaging, including the size of the container and product label, which
26  was prepared and approved by Defendant and its agents and disseminated statewide, as
27  well as designed to encourage consumers like Plaintiff to purchase the Product. Plaintiff
28  understood the size of the container and product label to indicate that the amount of

herbal tea contained therein was commensurate with the size of the container, and she would not have purchased the Product, or would not have paid a price premium for the Product, had she known that the size of the container and product label were false and misleading. If the Product's packaging and labels were not misleading, then Plaintiff would purchase the Product in the future.  Plaintiff intends to purchase the Product in the future but cannot reasonably do so without an injunctive relief order from the Court ensuring Defendant's packaging, labeling, and filling of the Product is accurate and lawful, at which point she will reasonably be able to rely upon Defendant's representations about the Product.

8.    Defendant Goosefoot Acres Inc. is an Ohio company doing business as Barbara's, with its principal place of business located in Valley City, Ohio.  Defendant, directly and through its agents, conducts business nationwide. Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is the owner, manufacturer, and distributor of the Product, and is the company that created and/or authorized the false, misleading, and deceptive packaging for the Product.

9.    In committing the wrongful acts alleged herein, Defendant planned and participated in and furthered a common scheme by means of false, misleading, and deceptive representations to induce members of the public to purchase the Product. Defendant participated in the making of such representations in that it did disseminate or cause to be disseminated said misrepresentations.

10.    Defendant, upon becoming involved with the manufacture, advertising, and sale of the Product, knew or should have known that its advertising of the Product's packaging, specifically by representing that they were full, was false, deceptive, and misleading. Defendant affirmatively misrepresented the amount of herbal tea contained in the Product's packaging in order to convince the public and consumers of the Product to purchase the Product, resulting in profits of millions of dollars or more to Defendant, all to the damage and detriment of the consuming public.

11.    Defendant has created and still perpetuates a falsehood that Product's packaging contains an amount of herbal tea commensurate with the size of the package, though they actually contain nonfunctional, unlawful slack-fill. As a result, Defendant's consistent and uniform advertising claims about the Product are false, misleading, and/or likely to deceive in violation of California packaging and advertising laws.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states. The Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

13.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District: Defendant made the challenged false representations to Plaintiff in this District; Plaintiff resides in this District; and Plaintiff purchased the Product in this District. Moreover, Defendant receives substantial compensation from sales in this District, actively advertises and sells the Product in this District, and made numerous misrepresentations through its advertising and labeling of the Product, which had a substantial effect in this District.

14.    Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendant and California. Defendant is authorized to do and is doing business in California.

## FACTUAL BACKGROUND

15.    The amount of product inside any product packaging is material to any consumer seeking to purchase that product. The average consumer spends only 13

seconds deciding whether to make an in-store purchase;[1] this decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased because consumers expect package size to accurately represent the quantity of the good being purchased[2].

16.    Accordingly, Defendant chose a certain size container for its Product to convey to consumers that they are receiving a certain and substantial amount of snack product commensurate with the size of the container. Such representations constitute an express warranty regarding the Product's content.

17.    Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

18.    Defendant falsely represents the quantity of product in each of the Product's opaque containers through its packaging. The size of each container leads the reasonable consumer to believe he or she is purchasing a container full of herbal tea when, in reality, they are actually receiving significantly less than what is represented by the size of the container.

19.    Even if Plaintiff and other reasonable consumers of the Product had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate to a quantity of snack product meaningfully different from their expectation of an amount of herbal tea with the size of the container.

20.    Prior to the point of sale, the Product's packaging does not allow for a visual or audial confirmation of the contents the Product. The Product's opaque

---

[1] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/insights/2015/make-the-most-of-your-brands-20-second-window/ (last visited May 2025).
[2] P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).

packaging prevents a consumer from observing the contents before opening. Even if a reasonable consumer were to "shake" the Product before opening the container, the reasonable consumer would not be able to discern the presence of any nonfunctional slack-fill, let alone the significant amount of nonfunctional slack-fill that is present in the Product.

21.     The other information that Defendant provides about the quantity of herbal tea on the front and back labels of the Product does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the size of the container itself. For instance, the front of the Product's packaging does not have any labels that would provide Plaintiff with any meaningful insight as to the amount of herbal tea to be expected, such as a fill line.

22.     Disclosures of net weight and serving sizes in ounces, pounds, or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of herbal tea contained in the Products' containers that would be different from their expectation that the quantity of herbal tea is commensurate with the size of the container.

23.     Plaintiff would not have purchased the Product had she known that the Product contained slack-fill that serves no functional or lawful purpose.

## **None of the Slack-Fill Statutory Exceptions Apply to the Product**

24.     Pursuant to 21 C.F.R. § 100.100, "a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading." An opaque container "shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill." *Id.* Nonfunctional slack-fill is empty space within packaging that is filled to less than its capacity for reasons other than provided for in the enumerated slack fill exceptions.

**A.     21 C.F.R. 100.10(a)(1) – Protection of the Contents**

25.    The slack-fill in the Product's containers does not protect the contents of the packages. In fact, because of the nature of the Product, there is little need to protect the Product with the slack-fill present.

**B.    21 C.F.R. 100.100(a)(2) – Requirements of the Machines**

26.    The machines used to package the Products would not be affected if there was more snack product added. At most, a simple recalibration of the machines would be required. Upon information and belief, adjusting these machines is rather simple.

27.    Because the packages are filled to less than half of their capacity, Defendant can increase the Product's fill level significantly without affecting how the containers are sealed, or it can disclose the fill-level on the outside labeling to inform consumers of the amount of product actually in the container, consistent with the law.

**C.    21 C.F.R. 100.100(a)(3) – Settling During Shipping and Handling**

28.    The slack-fill present in the Product's containers is not a result of the product settling during shipping and handling. Given the Product's density, shape, and composition, most settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling.

29.    Even if *some* product settling may occur, there is no reason why the Product's containers are almost half empty, when competitor products which have similar product density, shape, and composition as Defendant's product are filled more than this one.

**D.    21 C.F.R. 100.100(a)(4) – Specific Function of Package**

30.    The packages do not perform a specific function that necessitates the slack-fill. This safe harbor would only apply if a specific function were "inherent to the nature of the food and [] clearly communicated to consumers." The packages do not perform a function that is inherent to the nature of the food. Defendant did not communicate a specific function to consumers, making this provision inapplicable.

**E.    21 C.F.R. 100.100(a)(5) – Reusable Container**

31.     The Product's packaging is not reusable or of any significant value to the Product independent of its function to hold the snack food product. The Product's containers are intended to be discarded immediately after the snack product is used.

**F.      21 C.F.R. 100.100(a)(6) – Inability to Increase Fill or Decrease Container Size**

32.     The slack-fill present in the Product's containers does not accommodate required labeling, discourage pilfering, facilitate handling, or prevent tampering.

33.     Defendant can easily increase the quantity of herbal tea in each container (or, alternatively, decrease the size of the containers) significantly.

34.     Because none of the safe harbor provisions apply to the Product's packaging, the packages contain nonfunctional slack-fill in violation of 21 C.F.R. 100.100 and are, therefore, filled as to be misleading. Plaintiff shall proffer expert testimony to establish these facts once this case reaches the merits more definitively.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff bring this action on her own behalf and on behalf of all other persons similarly situated. The Class which Plaintiff seeks to represent comprises:

**All persons who purchased the Product in California for personal use and not for resale during the four years prior to the filing of this Complaint to the present (the "Class").**

Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Product. Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

36.     The Class is comprised of many thousands of persons. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

37.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common questions of law and fact include, but are not limited to, the following:

a.  The true nature and amount of product contained in each Product's packaging;

b.  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

c.  Whether Defendant misrepresented that the Product's packaging complied with California slack-fill regulations and statutes;

d.  Whether the Product contains nonfunctional slack-fill in violation of 21 C.F.R. § 100.100, *et seq.*;

e.  Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business and Professions Code § 17200, *et seq.*;

f.  Whether Defendant's conduct is an unfair business act or practice within the meaning of Business and Professions Code § 17200, *et seq.*;

g.  Whether Defendant's advertising is untrue or misleading within the meaning of Business and Professions Code § 17500, *et seq.*;

h.  Whether Defendant made false and misleading representations in its advertising and labeling of the Product;

i.  Whether Defendant knew or should have known that the misrepresentations were false;

j.  Whether Plaintiff and the Class paid more money for the Product than they actually received;

k.  How much more money Plaintiff and the Class paid for the Product than they actually received; and

l.  Whether Defendant was unjustly enriched at the expense of Plaintiff and the Class members.

38.     Plaintiff's claims are typical of the claims of the proposed Class, as the representations and omissions made by Defendant are uniform and consistent and are contained on packaging and labeling that was seen and relied on by Plaintiff and members of the Class.

39.     Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

40.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false, deceptive, and misleading representations. Plaintiff purchased the Product because of the size of the container and the product labels, which she believed to be indicative of the amount of herbal tea contained therein as commensurate with the size of the container. Plaintiff relied on Defendant's representations and would not have purchased the Product if she had known that the packaging, labeling, and advertising as described herein was false and misleading.

41.     The Class is identifiable and readily ascertainable. Notice can be provided to such purchasers using techniques and a form of notice similar to those customarily used in class actions and by Internet publication, radio, newspapers, and magazines.

42.     A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually. The trial and the litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

43.     Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by

individual Class members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

44.    Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## FIRST CAUSE OF ACTION

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### BUSINESS & PROFESSIONS CODE § 17200, *et seq.*

45.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

46.    Plaintiff brings this claim individually and on behalf of the Class.

47.    Congress passed the Federal Food, Drug, and Cosmetic Act ("FDCA"), and in so doing established the Federal Food and Drug Administration ("FDA") to "promote the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393.

48.    The FDA has implemented regulations to achieve this objective. *See, e.g.,* 21 C.F.R. § 101.1 *et seq.*

49.    The legislature of California has incorporated 21 C.F.R. Section 100.100, which prohibits nonfunctional slack-fill, into the State's Business & Professions Code § 12606.2, *et seq.*

50.    The FDA enforces the FDCA and accompanying regulations; "[t]here is no private right of action under the FDCA." *Ivie v. Kraft Foods Global, Inc.,* 2013 U.S. Dist. LEXIS 25615, 2013 WL 685372, at *1 (internal citations omitted).

51.    In 1990, Congress passed an amendment to the FDCA, the Nutrition Labeling and Education Act ("NLEA"), which imposed a number of requirements specifically governing food nutritional content labeling. *See, e.g.*, 21 U.S.C. § 343 *et. seq.*

52.    Plaintiff is not suing under the FDCA, but under California state law.

53.    The California Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code Section 109875 *et seq.*, has adopted wholesale the food labeling requirements of the FDCA and NLEA as the food regulations of California. Cal. Health & Safety Code § 110100.

54.    The Sherman Law declares any food to be misbranded if it is false or misleading or if the labeling does not conform with the requirements for nutrition labeling set forth in certain provisions of the NLEA. Cal. Health & Safety Code §§ 110660, 110665, 110670.

55.    The UCL prohibits "any unlawful [or] unfair... business act or practice." Cal. Bus & Prof. Code § 17200.

## A. "Unfair Prong"

56.    Under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

57.    Defendant's actions alleged herein do not confer any benefit to consumers.

58.    Defendant's actions alleged herein cause injuries to consumers, who do not receive a quantity of Product commensurate with their reasonable expectations.

59.    Defendant's actions alleged herein cause injuries to consumers, who do not receive a level of snack food commensurate with their reasonable expectations.

60.    Defendant's actions alleged herein cause injuries to consumers, who end up overpaying for the Product and receiving a quantity of herbal tea less than what they expected to receive.

61.    Consumers cannot avoid any of the injuries caused by Defendant's actions as alleged herein.

62.    Accordingly, the injuries caused by Defendant's conduct alleged herein outweigh any benefits.

63.    Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business & Professions Code § 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

64.    Here, Defendant's challenged conduct of has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

65.    Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T WirelessServs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

66.    The California legislature maintains a declared policy of prohibiting nonfunctional slack-fill in consumer goods, as reflected in California Business & Professions Code § 12606.2 and Cal. Health & Safety Code § 110100.

67.    The significant nonfunctional slack-fill contained in the Product is tethered to a legislative policy declared in California according to Cal. Business & Professions Code § 12606.2 and Cal. Health & Safety Code § 110100.

68.    Defendant's packaging of the Product, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

69.    Defendant knew or should have known of its unfair conduct.

70.    As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unfair business practice within the meaning of California Business & Professions Code § 17200.

71.    There existed reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have used packaging appropriate for the amount of product contained within the Product or Defendant could have filled the Product significantly more to meet consumers' reasonable expectations based on the size of the Product packaging.

72.    All of Defendant's conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's unfair conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

73.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for the Product.  Specifically, Plaintiff paid for snack food product she never received. Plaintiff would not have purchased the Product if she had known that the Product's packaging contained nonfunctional slack-fill.

### B.  "Unlawful" Prong

74.    California Business & Professions Code § 17200, *et seq.*, identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

75.    Defendant's packaging of the Product, as alleged in the preceding paragraphs, violates California Civil Code § 1750, *et. seq.*, California Business & Professions Code § 17500, *et. seq.*, and 21 C.F.R § 100.100.

76.    Defendant's packaging of the Product, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

77.    Defendant knew or should have known of its unlawful conduct.

78.    As alleged herein, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business & Professions Code § 17200.

79.    There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have either used packaging appropriate for the amount of snack product contained therein or indicated how much herbal tea the Product contained with a clear and conspicuous fill line.

80.    All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's unlawful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

81.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for the Product.  Specifically, Plaintiff paid for snack product she never received. Plaintiff would not have purchased the Product if she had known that the packaging contained nonfunctional slack-fill.

82.    As a result of the conduct described herein, Plaintiff and members of the Class, pursuant to section 17203, are entitled to an order enjoining such future wrongful conduct on the part of Defendant and such other orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Product as a result of the wrongful conduct of Defendant.

83.    Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a.    The applicable limitations period is four years for claims brought under the UCL, which is one year longer than the applicable statute of limitations under the FAL and CLRA. Thus, class members who purchased the

Product between 3 and 4 years prior to the filing of the complaint will be barred from the Class if equitable relief were not granted under the UCL.

b.  The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein to include, for example, the overall unfair marketing scheme of underfilling the Product's packaging. Thus, Plaintiff and class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and certain statutorily enumerated conduct).

c.  Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to deceptively underfill the Product's packaging. Injunctive relief is necessary to prevent Defendant from continuing to engage in this unfair and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Product that has resulted from years of Defendant's unlawful marketing efforts. Such modifications could include, but are not limited to, shrinking the packaging, adding more product to the packaging, or adding a fill line on the front label. Such relief is not available through a legal remedy, as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this

time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members will pay for the underfilled Product), rendering injunctive relief a necessary remedy.

84.    Pursuant to Civil Code § 3287(a), Plaintiffs and the Class are further entitled to prejudgment interest as a direct and proximate result of Defendant's unfair and unlawful business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class are entitled to interest in an amount according to proof.

## SECOND CAUSE OF ACTION

## FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *et seq.*

85.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

86.    Plaintiff brings this claim individually and on behalf of the Class.

87.    California's False Advertising Law, California Business and Professions Code Section 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should beknown, to be untrue or misleading."

88.    Defendant knowingly manipulated the physical dimensions of the Product's containers, or stated another way, underfilled the amount of snack product in the Product, as a means to mislead the public about the amount of snack product contained in each package.

89.   Defendant controlled the packaging of the Product. It knew or should have known, through the exercise of reasonable care, that its representations about the quantity of crunchy product contained in the Product were untrue and misleading.

90.   Defendant's action of packaging the Product with nonfunctional slack-fill, instead of including more herbal tea in the container or decreasing the size of the container, is likely to deceive the general public.

91.   Defendant's actions were false and misleading, such that the general public is and was likely to be deceived, in violation of Section 17500.

92.   As a direct and proximate result of Defendant's conduct alleged herein in violation of the FAL, Plaintiff and members of the Class, pursuant to Section 17535, are entitled to an order of this Court enjoining such future wrongful conduct on the part of Defendant and requiring Defendant to disclose the true nature of its misrepresentations.

93.   Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a.   The scope of permissible plaintiffs under the FAL is broader than the CLRA to include, for example, individuals or entities who purchased the Product for nonpersonal, non-family, and non-household purposes. Thus, Plaintiff and class members may be entitled to restitution under the FAL, while not entitled to damages under the CLRA

b.   Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to deceptively underfill the Product's packaging. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Product that has resulted from years of Defendant's unfair and unlawful marketing efforts. Such modifications would include, but are not limited

to, shrinking the packaging, adding more product to the packaging, or adding a fill line the front label. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members overpay for the underfilled Products), rendering injunctive relief a necessary remedy.

94.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Product in reliance upon the claims by Defendant that the Product was of the quantity represented by Defendant's packaging and advertising. Plaintiff would not have purchased the Product if she had known that the packaging and labeling as alleged herein were false.

95.    Plaintiff and members of the Class also request an order requiring Defendant disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, plus interests and attorneys' fees.

## THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, *et seq*.

96.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

97.    The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.

98.    The practices described herein, specifically Defendant's packaging, advertising, and sale of the Product, were intended to result and did result in the sale of

the Product to the consuming public and violated and continue to violate sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA by: (1) misrepresenting the approval of the Product as compliant with 21 C.F.R § 100.100 and the Sherman Law; (2) representing the Product has characteristics and quantities that it does not have; (3) advertising and packaging the Product with intent not to sell it as advertised and packaged; and (4) representing that the Product has been supplied in accordance with a previous representation as to the quantity of herbal tea contained within each container, when it has not.

99.    Defendant deceived and continues to deceive Plaintiff and the Class by representing that the Product's packaging, which includes significant nonfunctional slack-fill, actually conforms to federal and California slack-fill regulations and statutes including the Sherman Law and 21 C.F.R. § 100.100.

100.    Defendant packaged the Product in containers that contain significant nonfunctional slack-fill and made material misrepresentations to deceive Plaintiff and the Class.

101.    Defendant deceived Plaintiff and the Class by misrepresenting the Product as having characteristics and quantities which it does not have, e.g., that the Product is free of nonfunctional slack-fill when it is not. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

102.    Defendant deceived Plaintiff and the Class by packaging and advertising the Product with intent not to sell it as advertised and by intentionally underfilling the Product's containers and replacing snack product with nonfunctional slack-fill. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

103.   Defendant deceived Plaintiff and the Class by representing that the Product was supplied in accordance with an accurate representation as to the quantity of herbal tea product contained therein when they were not. Defendant presented the physical dimensions of the Product's packaging to Plaintiff and the Class before the point of purchase and gave Plaintiff and the Class a reasonable expectation that the quantity of product contained therein would be commensurate with the size of the packaging. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

104.   Defendant knew or should have known, through the exercise of reasonable care, that the Product's packaging was misleading.

105.   Defendant's packaging of the Product was a material factor in Plaintiff's and the Class's decisions to purchase the Product. Based on Defendant's packaging of the Product, Plaintiff and the Class reasonably believed that they were getting more product than they actually received. Had they known the truth of the matter, Plaintiff and the Class would not have purchased the Product.

106.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair and unlawful conduct. Specifically, Plaintiff paid for snack product she never received. Plaintiff would not have purchased the Product had she known the container contained nonfunctional slack-fill.

107.   Plaintiff respectfully requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2). In addition, Defendant should be compelled to provide restitution and damages to consumers who paid for Product that are not what they expected to receive due to Defendant's misrepresentations.

108.   Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.  Injunctive relief is appropriate on behalf of Plaintiff and

members of the Class because Defendant continues to deceptively underfill the Product's packaging. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent future harm – none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Product that has resulted from years of Defendant's unfair and unlawful marketing efforts. Such modifications would include, but are not limited to, shrinking the packaging, adding more herbal tea to the packaging, or adding a fill line on the front label. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members overpay for the underfilled Product), rendering injunctive relief a necessary remedy.

109. Plaintiff has complied with the CLRA pre-filing notice provision, but Defendant has not provided all of the requested relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all causes of action as follows:

A.  An Order certifying the Class, appointing Plaintiff as class representative, and designating Plaintiff's counsel as counsel for the Class;

B.  An order enjoining Defendant from continuing to package and/or label the Product as challenged herein;

C.   Damages against Defendant in an amount to be determined at trial, together with pre- and post- judgement interest at the maximum rate allowable by law on any amounts awarded;

D.   Restitution and/or disgorgement in an amount to be determined at trial;

E.   Reasonable attorneys' fees and costs; and

F.   Granting such other and further as may be just and proper.

Dated:  June 5, 2025                      PACIFIC TRIAL ATTORNEYS, APC


By:_____
Scott. J. Ferrell
Attorneys for Plaintiff